EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Julio Rodríguez Planell<br><br>       Recurrido<br><br>              v.<br><br> Overseas Military Sales Corp.;<br> Scotiabank de Puerto Rico;<br> Alberic Colón; Chrysler<br> Internacional Services S.A.<br><br>      Peticionarios | Certiorari<br><br>2003 TSPR 140<br><br> 160 DPR \_\_\_\_ |

Número del Caso: CC-2002-888


Fecha: 18 de septiembre de 2003


Tribunal de Circuito de Apelaciones:
                    Circuito Regional II


Juez Ponente:
             Hon.  Néstor S. Aponte Hernández


Oficina del Procurador General:
                    Lcda. Sylvia Roger-Stefani
                    Procuradora General Auxiliar

Abogados de Overseas Military Sales Corp.:
                    Lcda. Myriam Y. Fernández González
                    Lcdo. Edgar Cartagena Santiago


Materia: Revisión Administrativa de Resolución Interlocutoria
        Dictada por el Departamento de Asuntos del Consumidor

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Julio Rodríguez Planell

    Recurrido

          v.                         CC-2002-0888     Certiorari

Overseas Military Sales Corp.;
Scotiabank de Puerto Rico;
Alberic Colón; Chrysler
International Services S.A.

    Peticionarios

Opinión del Tribunal emitida por el Juez Asociado SEÑOR CORRADA DEL RÍO

San Juan, Puerto Rico, a 18 de septiembre de 2003.

Nos corresponde resolver si un residente de Puerto Rico puede solicitar los remedios que le provee el Reglamento de Garantías de Vehículos de Motor, aprobado por el Departamento de Asuntos del Consumidor (en adelante, "DACO"), para reclamar por los alegados desperfectos de un automóvil que adquirió de un distribuidor autorizado a hacer negocios exclusivamente dentro de bases militares.

Por los fundamentos que se exponen a continuación, resolvemos en la afirmativa.

I

El 1 de marzo de 2001, el Sr. Julio Rodríguez Planell (en adelante, "Sr. Rodríguez Planell" o "el

recurrido") compró a Overseas Military Sales Corp. (en adelante, "Overseas") un automóvil marca Jeep, modelo Cherokee Sport 2000. Según se desprende del expediente, el vehículo adquirido por el recurrido pagó arbitrios locales, licencia de vehículo de motor, y su adquisición fue para propósitos de transitar dentro de la jurisdicción estatal de Puerto Rico.

Luego de tomar posesión del vehículo, el recurrido notó que éste presentaba defectos en su pintura, por lo que acudió al establecimiento automotriz Alberic Colón—representante autorizado del fabricante en Puerto Rico—con el propósito de reparar el desperfecto conforme a la garantía. Sin embargo, Alberic Colón se negó a reparar el automóvil, alegando que el recurrido lo examinó e inspeccionó al momento de la compra, adquiriéndolo "as is" (tal como estaba), con pleno conocimiento de que tenía defectos en la pintura. Alegó, además, que precisamente por ese defecto el recurrido negoció y recibió un descuento de $1,600.00 al comprar la unidad, entendiendo y aceptando que dicha cantidad sería la única compensación que recibiría por la condición del vehículo.[1]

Así trabada la controversia, el 21 de junio de 2001, el Sr. Rodríguez Planell presentó ante DACO una querella contra Overseas, Scotiabank de Puerto Rico, Alberic Colón

---

[1] *Véase* "Release and Acknowledgement of Disclosure by Overseas Military Sales Corporation of Damage to Motor Vehicle", Apéndice, a la pág. 50.

y Chrysler International Services S.A., en la cual alegó que el vehículo adquirido presentaba problemas de fábrica en su pintura.[2] Como remedio, éste solicitó la reparación del automóvil, así como transportación alterna mientras se tramitaba dicha gestión.[3]

Overseas compareció ante DACO el 6 de julio de 2001 y, haciendo la salvedad de que no se sometía a la jurisdicción de dicha agencia, presentó una moción mediante la cual solicitó que se desestimara la querella en su contra. Adujo, en síntesis, que es una corporación foránea que tiene sus facilidades localizadas en el Fuerte Buchanan, y que se dedica a vender vehículos de motor exclusivamente en bases militares de Puerto Rico. Indicó, además, que sus negocios los realiza únicamente con miembros de las fuerzas armadas que gozan de privilegios bajo la Directiva Número 1330.9 del Departamento de Estado, conforme al programa denominado "The New Car Sales Program" del Departamento de Defensa de Estados Unidos.[4] Sostuvo, pues, que debido a esas circunstancias particulares, no le aplicaba el derecho local, estando sujeta únicamente a la ley federal conocida como "Magnuson-Moss Warranty Federal Trade Comission Improvement Act," 15 U.S.C.A. § 2301 *et*

---

[2] *Véase* Apéndice, a la pág. 39.

[3] *Véase* Apéndice, a la pág. 40.

[4] La referida Directiva incluye dentro de los beneficiarios del Programa a personal militar, veteranos y empleados civiles federales autorizados. *Véase* Apéndice, a la pág. 43.

*seq.*,(en adelante, "Ley Magnuson-Moss").[5] En consecuencia, Overseas señaló la falta de jurisdicción de DACO para entender en la controversia, apuntando a que la Ley Orgánica de dicha agencia limita su autoridad a proveer remedios exclusivamente al amparo de las leyes de Puerto Rico.[6]

Tras varios trámites procesales, el 1 de abril de 2002, DACO emitió una Resolución interlocutoria declarando sin lugar la solicitud de desestimación presentada por Overseas. La agencia fundamentó su denegatoria en que la Ley Magnuson-Moss, *supra*, no desplazaba a la Ley de DACO, 3 L.P.R.A. § 341 *et seq*. Además, señaló que si dejara de asumir jurisdicción sobre el asunto en cuestión, se produciría la anomalía de que un grupo de consumidores de vehículos de motor en Puerto Rico ostentaría menos derechos que otros, pues no

---

[5] La Ley Magnuson-Moss, *supra*, aplica a Puerto Rico en virtud de su sección 101, que establece que "the term State means a State, the District of Columbia, the Commonwealth of Puerto Rico, the Virgin Islands, Guam, the Canal Zone, or American Samoa." 15 U.S.C.A. § 2301(15).

[6] El Artículo 15 de la Ley de DACO dispone que:

> *[c]ualquier consumidor podrá radicar una querella en el Departamento [DACO] para vindicar los derechos que le conceden las leyes del Estado Libre Asociado de Puerto Rico.* En caso de que la querella radicada por el consumidor no plantee ninguna controversia adjudicable, el Departamento asesorará al consumidor con respecto a la solución de su querella y/o [sic] referirá la misma a cualesquiera agencia pertinente del Estado Libre Asociado o de los Estados Unidos...3 L.P.R.A. § 341n (énfasis suplido).

tendrían acceso al foro más económico, rápido y con mayor peritaje sobre dicha materia.[7]

Inconforme con dicho dictamen, Overseas presentó un recurso de revisión administrativa ante el Tribunal de Circuito de Apelaciones (en adelante, "TCA"). Tras evaluar el recurso,[8] dicho foro revocó la resolución interlocutoria recurrida, desestimando la querella en cuanto a Overseas.[9] Sostuvo el TCA que DACO no podía entender en el asunto, toda vez que la jurisdicción de los foros locales sobre hechos o controversias ocurridas en alguna base militar de los Estados Unidos sita en Puerto Rico está limitada a aquellos casos en los que no hay derecho federal aplicable y, por tanto, no aplicar el derecho local resultaría en una laguna jurídica.[10] Puntualizó, además, que dicha jurisdicción es una judicial, limitada a controversias que puedan ser ventiladas ante los tribunales locales.[11]

---

[7] *Véase* Apéndice, a la pág. 145. El 22 de abril de 2002, Overseas procedió a solicitar reconsideración, la cual fue denegada mediante resolución de 7 de mayo de 2002.

[8] A pesar de que la Ley de Procedimiento Administrativo Uniforme, 3 L.P.R.A. § 2101 *et seq.*, limita la jurisdicción revisora del TCA a órdenes y resoluciones finales de las agencias, dicho foro razonó que procedía entender en el caso toda vez que "la agencia claramente no [tenía] jurisdicción." *Véase* Apéndice, a la pág. 15.

[9] Véase Sentencia de 23 de octubre de 2002, Apéndice, a la pág. 3.

[10] *Véase* Apéndice, a la pág. 10.

[11] *Id.*

En desacuerdo con lo resuelto, DACO acudió ante nos el 25 de noviembre de 2002, formulando el siguiente señalamiento de error:

> **Erró el Honorable Tribunal de Circuito de Apelaciones al determinar que la Ley Federal Magnuson-Moss desplaza la ley estatal y al resolver que DACO carece de jurisdicción sobre los hechos y que, en consecuencia, no aplica el Reglamento de Garantías de Vehículos de Motor de Puerto Rico, cuando la propia ley federal dispone que los remedios bajo las leyes locales y estatales estarán disponibles al reclamante.**

Expedimos el auto solicitado mediante Resolución de 7 de febrero de 2003. Atendidos los planteamientos de las partes, resolvemos.

II

Sabido es que el concepto "jurisdicción" se refiere al poder o autoridad que ostenta un tribunal para considerar y decidir casos o controversias. *Gearheart v. Haskell*, 87 D.P.R. 57, 61 (1963). Conforme a la Ley de la Judicatura de 1994, según enmendada, 4 L.P.R.A. § 22 *et seq.*, los tribunales de Puerto Rico son de jurisdicción general, por lo que de ordinario éstos pueden entender en toda clase de controversia justiciable que surja dentro de nuestra extensión territorial, al amparo de nuestras leyes estatales. Asimismo, los tribunales de Puerto Rico tienen, como regla general, jurisdicción concurrente con los tribunales federales para atender asuntos que surjan bajo el palio de las leyes federales. *Yellow Freight Sys., Inc. v. Donnelly*, 494 U.S. 820 (1990); *Gulf Offshore Co. v. Mobil Oil*

*Corp.*, 453 U.S. 473 (1981).   Por el contrario, la jurisdicción exclusiva de los tribunales federales sobre algún asunto de derecho federal procede únicamente cuando el Congreso de Estados Unidos dispone expresamente para ello, o cuando ha sido declarada así por el Tribunal Supremo de Estados Unidos en situaciones en que la intención del Congreso de privar a los tribunales estatales de jurisdicción sobre dicho asunto federal es patentemente clara.  *Id.*

Ahora bien, cuando los hechos en controversia se suscitan dentro de una base militar de los Estados Unidos, hemos resuelto el conflicto jurisdiccional adoptando la doctrina de "enclave federal."   De este modo, en *Roberts v. U.S.O. Council of P.R.*, 145 D.P.R. 58 (1998), *supra*, explicamos que dicha doctrina— que se deriva del Art. I, sección 8, cláusula 17, de la Constitución federal— postula que el Congreso federal posee jurisdicción exclusiva para establecer el derecho que regirá dentro de las bases militares de Estados Unidos.[12] No obstante, aclaramos que dicho poder plenario

---

[12] La mencionada disposición constitucional establece que el Congreso tendrá facultad para:

> [e]jercer el derecho exclusivo a legislar en **todas las materias** concernientes a aquél distrito (cuya superficie no excederá de diez millas cuadradas) que, por cesión de algunos estados y aceptación del Congreso, se convirtiere en la sede del Gobierno de los Estados Unidos; **y para ejercer igual autoridad sobre aquellas tierras adquiridas con el consentimiento de la Asamblea Legislativa del**

continúa...

no se extiende, sin más, a conferirle a los tribunales federales jurisdicción exclusiva para dilucidar las controversias que allí se produzcan. Es decir, según la norma enunciada en *Roberts*, *supra*, dentro de las bases militares de Estados Unidos el gobierno federal tiene jurisdicción exclusiva en el ámbito legislativo, mas no en el judicial.

Sobre el particular, hemos expresado que el concepto de "jurisdicción legislativa" se refiere a quién tiene la facultad para regular, mediante legislación, determinada materia, hecho o situación. *Roberts v. U.S.O. Council of P.R.*, *supra*, a la pág. 67. Dicho de otro modo, la "jurisdicción legislativa" se refiere a "qué ley aplica" a determinada controversia. *Id*., a la pág. 68. Mientras que, por otro lado, la "jurisdicción judicial" se refiere a cuál tribunal (estatal o federal) está autorizado para entender en las controversias que se susciten dentro del enclave. *Id*, a la pág. 68.

_____

... 12 continuación

**estado en que radicaren, con el fin de construir fuertes, almacenes, arsenales, astilleros y otras edificaciones que fueren necesarias.**" Const. E.U., 1 L.P.R.A., Art. I, § 8, Cl. 17 (énfasis suplido).

A pesar de que dicha disposición constitucional no aplica directamente a Puerto Rico, hemos resuelto que conforme a lo establecido por la Ley de 16 de febrero de 1903— ley mediante la cual Puerto Rico autorizó al Congreso a adquirir terrenos de la Isla para fines navales y militares— su mandato se impone en nuestra jurisdicción. *Véase Roberts v. U.S.O. Council of P.R.*, *supra*, a la pág. 66; *Moore v. Corte*, 59 D.P.R. 620, 623 (1941). La referida ley de 1903 fue sustituida por la Ley Núm. 62 de 10 de junio de 1955, 28 L.P.R.A. § 54 *et seq*.

La esencia y extensión de la referida "jurisdicción legislativa" fueron desarrolladas por este Tribunal en *Quiles vda. de Fonte v. Colsa, Inc.*, 147 D.P.R. 360 (1999). En esa ocasión expresamos que, a pesar de que de ordinario la legislación aplicable a una controversia originada en una base militar es el derecho federal, ello supone que el Congreso efectivamente haya legislado sobre la materia que se dilucida. *Id.*, a la pág. 365. O sea, que **la aplicación del derecho federal a tales situaciones está condicionada a que el Congreso, en virtud del poder plenario que ostenta para regular las actividades de la base militar, haya legislado sobre la materia específicamente en controversia**. *Id.* Por tanto, resolvimos que en casos en que el Congreso no haya legislado para la base sobre un asunto en particular, procede aplicar el derecho privado estatal que no sea inconsistente con el federal . *Id.*, a la pág. 366; *véase además Gearheart v. Haskell*, *supra*, a la pág. 62. Conforme a ello, concluimos en esa ocasión que, en vista de que no había legislación federal que atendiera la controversia específicamente, procedía aplicar el derecho local de daños y perjuicios.[13] *Id.*

---

[13] Añadimos, a la pág. 367 de la referida opinión, que tal "conclusión se refuerza, no solo porque no existe derecho federal sustantivo aplicable al caso de autos, sino porque aun bajo procedimientos tramitados al amparo del 'Federal Tort [Claims] Act', 28 U.S.C. secs. 1346, 2671 *et seq.*, el derecho que rige las reclamaciones por actos u omisiones negligentes es el derecho sustantivo

continúa...

A pesar de que en *Quiles*, *supra*, la aplicación del derecho puertorriqueño respondió a que no existía derecho federal aplicable, igualmente hemos resuelto que existen situaciones en las cuales procede aplicar las leyes locales aunque también exista derecho federal pertinente a la controversia. Por ejemplo, en *Nolla, Galib & Cía. v. Tribunal Superior*, 93 D.P.R. 646 (1966)— citado favorablemente en *Quiles*, *supra*, y cuya controversia se desarrolló dentro de un enclave militar,[14]— aunque reconocimos que a los obreros reclamantes les cobijaba principalmente la Ley Federal de Normas Razonables de Trabajo, resolvimos que también los protegían las leyes laborales locales en todo aquello que les resultara más beneficioso que las disposiciones de la ley federal. *Id.*, a la pág. 648. Dicha conclusión no es inconsistente con lo establecido en *Roberts*, *supra*, a la pág.70, donde apuntamos a que aun en enclaves federales, los estados pueden reservarse determinadas áreas o controversias sobre las cuales pueden legislar o actuar, siempre y cuando dicho ejercicio no sea inconsistente con los propósitos federales del enclave.

---

... [13] continuación

del estado en donde ocurre el acto u omisión negligente...aun cuando tal acto u omisión hubiese ocurrido en un enclave militar federal."

[14] En dicho caso se trataba de unos obreros que contrataron su mano de obra con el Gobierno de Estados Unidos para la construcción de unas edificaciones en la base naval de Roosevelt Roads.

Por tanto, puede decirse que a pesar de que lo usual en controversias originadas en un enclave federal es que se aplique la legislación que apruebe el Congreso de Estados Unidos, dicha operación no es automática.[15]  Así pues, procede aplicar la ley estatal cuando no hay legislación federal que atienda la controversia directamente, o cuando la primera no es desplazada por la segunda expresa o implícitamente.

En atención a lo anterior, debemos determinar primeramente cuál es el derecho aplicable a la controversia de autos, toda vez que si se trata de una ley federal, debemos dilucidar si dicha ley desplaza la aplicación del derecho local ("pre-emption"/jurisdicción legislativa) o si dispone expresamente que sólo los tribunales federales pueden entender en ella (jurisdicción federal exclusiva/jurisdicción judicial). Esto es fundamental, ya que de contestarse en la afirmativa uno de los supuestos, DACO carecería de jurisdicción para entender en la controversia.[16]  Veamos.

---

[15] *Véase Kleppe v. New Mexico*, 426 U.S. 529, 544 (1976), donde se expresa que **"without more, federal ownership of lands within a State does not withdraw those lands from jurisdiction of the State"** (énfasis suplido); *Véase además Surplus Trading Co. v. Cook*, 281 U.S. 647 (1930).  Asimismo, véase Laurence H. Tribe, American Constitutional Law, Third Ed., Vol. I (2000), p. 1224, quien expresa que **"[c]ongressional jurisdiction over federal enclaves is exclusive only if excersiced"** (énfasis suplido).

[16] *Véase* escolio 5, *supra*.

III

Overseas alega que en virtud de la norma establecida en *Roberts v. U.S.O. Council of P.R.*, *supra*, las controversias ocurridas dentro del Fuerte Buchanan se tienen que dilucidar a la luz del derecho federal. Asimismo, ésta sostiene que lo establecido por *Quiles vda. de Fonte*, *supra*, limita la aplicación del derecho estatal a casos en los que el Congreso no ha legislado sobre una materia específica, para subsanar una laguna jurídica. Por consiguiente, aduce que habiendo aprobado el Congreso la Ley Magnuson-Moss, *supra*, no existe laguna que suplir, por lo que es forzoso resolver a la luz del derecho federal.[17] Diferimos de esa interpretación.

Como expresáramos en la sección anterior, es indiscutible que el Congreso tiene jurisdicción exclusiva para legislar sobre las bases militares que el gobierno federal ocupa a través de los diferentes estados y territorios. Ahora bien, el Congreso puede ejercer dicha jurisdicción de diversas formas, a saber: 1) legislando expresamente sobre una materia particular, desplazando la aplicación del derecho estatal; 2) no legislando sobre un aspecto y, por tanto, aceptando la aplicación del derecho estatal; 3) legislando sobre un área determinada sin desplazar la aplicación del derecho estatal. Por tanto,

_____

[17] Sin embargo, Overseas reconoció que *"sería aplicable una ley estatal si el Congreso expresamente lo permite* o si existe un vacío legislativo, o sea, cuando el Congreso de Estados Unidos nada dijo sobre determinada materia." *Véase* Alegato de Overseas Military Auto Sales, a la pág. 11 (énfasis suplido).

habiendo aprobado el Congreso la Ley Magnuson-Moss, *supra*, lo que debemos resolver es si en el caso de marras, el Congreso utilizó su jurisdicción legislativa exclusiva con el propósito de desplazar la aplicación del derecho de Puerto Rico. Adviértase que, según antes señalado, el Congreso decidió tratar a Puerto Rico como un estado para fines de esta legislación. *Véase* 15 U.S.C.A. § 2301(15), escolio 5, *supra*.

Sobre la doctrina de desplazamiento u ocupación de campo, hemos establecido anteriormente que una ley federal tendrá supremacía sobre las leyes estatales cuando la primera no pueda coexistir con la segunda. *Hernández Villanueva v. I.P.C. Division of Comstar International, Inc.,* res. el 27 de enero de 2000, 150 D.P.R. ___ (2000); 2000 T.S.P.R. 14, 2000 J.T.S. 26; *Cotto Morales v. Calo Ríos*, 140 D.P.R 604 (1996). De este modo, se entenderá que el campo está ocupado cuando el Congreso expresamente lo dispone al aprobar determinada ley, o si al reglamentar un área específica, lo hace de una forma tan abarcadora que no cabe duda que la intención federal fue reglamentar la totalidad del área. *Hernández Villanueva v. I.P.C. Division of Comstar International, Inc*, supra, a la pág. 10; *Cotto Morales v. Calo Ríos*, *supra*, a la pág. 613. También se entiende que hay desplazamiento cuando cierto interés o propósito federal es tan dominante que no debe existir reglamentación estatal, o cuando la normativa estatal

podría producir un resultado inconsistente con los objetivos federales en determinada área. *Burbank v. Lockheed Air Terminal*, 411 U.S. 624, 633 (1973). Finalmente, hemos reiterado que **no se presumirá que la legislación federal sustituye a la estatal por el hecho de que el Congreso reglamente un área de forma limitada**, siendo necesario que la ley del Congreso interpretada razonablemente esté en conflicto real con la ley estatal. *Villanueva v. I.P.C. Division of Comstar International, Inc*, *supra*, a la pág. 11; *Cotto Morales v. Calo Ríos*, *supra*, a la pág. 613; *Bordas v. Srio. de Agricultura*, 87 D.P.R. 534, 552-553 (1963). Por ende, en ausencia de una prohibición específica en la ley federal contra la ley local, la legislación estatal que **complementa** a la ley federal es válida siempre y cuando que la primera no está sustancialmente en conflicto con la segunda. *Id.*

Atendidos estos preceptos, y tras evaluar la Ley Magnuson-Moss, *supra*, en toda su extensión, podemos constatar que no existe en la letra o propósitos de dicho estatuto ánimo alguno de desplazar la legislación estatal. Por el contrario, la misma ley federal provee para su co-existencia con leyes estatales, al disponer que:

> **[n]othing in this title [15 U.S.C.S. § 2301 et seq.] shall invalidate or restrict any right or remedy of any consumer under State law or any other Federal law**. 15 U.S.C.S. § 2311(b)(1) (énfasis suplido).

Colegimos, por tanto, que la Ley Magnuson-Moss, *supra*, establece unas normas y procedimientos que constituyen la protección mínima que todo estado, según definido en dicha ley, le debe proveer a sus consumidores. Sin embargo, ésta no excluye la aplicación concurrente de legislación estatal que se adhiera o supere beneficiosamente a la protección federal mínima.

Así pues, al estudiar el Reglamento de Garantías de Vehículo de Motor, Reglamento 4797 (DACO) de 30 de septiembre de 1992 (en adelante, "el Reglamento"), aprobado conforme a la Ley de DACO, *supra*, observamos que éste obedece las garantías mínimas establecidas por la Ley Magnuson-Moss, *supra*. No obstante, el referido Reglamento no solo se adhiere a los mínimos federales, sino que contiene unas disposiciones más precisas y detalladas que la ley del Congreso, ofreciendo así mayores protecciones al consumidor. Más aún, provee unas garantías que abarcan en un mismo instrumento toda una extensa gama de situaciones inherentes al negocio de compraventa automotriz,[18] desarrollando favorablemente

---

[18] Entre los derechos y deberes que se establecen en el Reglamento se encuentran, a saber: el deber del vendedor de entregar el certificado de garantía al comprador; deber del vendedor de un vehículo de motor nuevo, que no tenga las facilidades necesarias para honrar la garantía, de que el distribuidor de fábrica o autorizado honre la misma; deber de todo distribuidor autorizado o concesionario, representante de fábrica, distribuidor de fábrica, distribuidor independiente, y vendedor de, a nombre y en representación del fabricante o manufacturero, de honrar la garantía que concede dicho fabricante o manufacturero en el país de origen; deber de

continúa...

sobre los postulados generales que contiene la Ley Magnuson-Moss, *supra*.[19]

Por tanto, concluimos que el Reglamento no conflige con los remedios que provee la Ley Magnuson-Moss, *supra*, para casos como el de marras, siendo éste consistente con las garantías mínimas establecidas en la ley federal. De hecho, esta conclusión es similar a la expresada por el Secretario de Justicia en su opinión de 11 de marzo de 1986, en la cual éste concluyó que "la reglamentación local [sobre derechos del consumidor en el área de vehículos de motor] guarda estrecha similitud con la

_____

... 18 continuación

todo fabricante o manufacturero, concesionario, distribuidor o representante de fábrica, distribuidor autorizado, distribuidor independiente o vendedor de un vehículo de motor nuevo de hacer efectiva una garantía no menor de dos (2) años o veinticuatro mil (24,000) millas, lo que ocurra primero, a partir de la fecha en que el vehículo sea entregado al consumidor; contenido de la garantía mínima; forma de redacción de la garantía; obligación del manufacturero, distribuidor autorizado o concesionario o vendedor de proveer transportación; deber del fabricante de honrar garantía en ausencia del distribuidor de fábrica; obligaciones del fabricante o distribuidor de fábrica, distribuidor autorizado o vendedor al proveer servicio de reparación en garantía; obligaciones de mantenimiento y reparación ordinaria de la unidad; deber del fabricante o distribuidor de mantener un inventario de piezas de repuesto en proporción a sus niveles de distribución en Puerto Rico; y disposiciones como las anteriores, pero referentes a vehículos usados, motocicletas, entre otras.

[19] Por su parte, la Ley Magnuson-Moss, *supra*, cubre los siguientes aspectos, a saber: las reglas que deben regir el contenido de toda garantía; designación de garantías escritas; estándares federales mínimos para garantías; reglas que regirán los contratos de servicio de garantía; deberes de los representantes de la entidad garantizadora; garantías implícitas; remedios aplicables a disputas de consumidores; función de la Federal Trade Commission, entre otros.

reglamentación federal y va dirigida hacia el mismo fin."
Op. Sec. Just. Núm. 1986-11, a la pág. 73. Asimismo,
indicó que "el referido reglamento [DACO] contiene una
serie de disposiciones que garantizan una protección
igual o mayor que la reglamentación federal," razón por
la cual "no debe entenderse que la reglamentación federal
tiene el efecto de impedir reglamentación local sobre la
venta de vehículos de motor...." *Id.*, a la pág. 75.

Del mismo modo, entendemos que el aplicar el derecho
estatal tampoco conflige con la misión militar del Fuerte
o con algún interés federal de envergadura,[20] y que si
posterior a la vigencia de ambos estatutos (Ley Magnuson-
Moss y el Reglamento) el Congreso hubiese entendido lo
contrario, éste hubiese optado por excluir la aplicación
de dichas leyes dentro de dicho enclave federal, lo que
no ha hecho. Nótese, además, que el vehículo en cuestión
no es uno para uso militar ni tampoco transita
exclusivamente dentro de los predios del "enclave
militar", sino que transita por las avenidas y calles de
Puerto Rico. ***En consecuencia, resolvemos que en relación***
***con esta área del derecho privado dentro del Fuerte***

---

[20] *Véase Paul v. U.S.*, *supra*, a la pág.274, "state
law cannot be allowed to impair fulfillment of
appropriate federal functions, be they civil or military;
similarly, state measures contrary to national policy
cannot be allowed to bind or inhibit federal activities";
*Howard v. Com'rs of Sinking Fund of City of Louisville*,
344 U.S. 624 (1953), "state can excercise its power over
federal area within its boundaries, so long as there is
no interference with jurisdiction asserted by Federal
Government"; *véase además Knickerbocker Ice Co. v.*
*Stewart*, 253 U.S. 149 (1920).

***Buchanan**, el Congreso ejerció su jurisdicción legislativa permitiendo la aplicación del derecho estatal que no fuese inconsistente con las normas federales.*[21]

De conformidad, no siendo la Ley de DACO, *supra*, ni el Reglamento inconsistentes con la Ley Magnuson-Moss, *supra*, ni con algún interés federal o militar significativo, procede que el recurrido Sr. Rodríguez Planell utilice los remedios que le provee la Ley de DACO, *supra*. Por ende, dicha agencia puede entender en la controversia de autos.

IV

Por los fundamentos que anteceden, resolvemos que, a tenor con la doctrina de "enclave federal", el Congreso de Estados Unidos ejerció su jurisdicción exclusiva dentro del Fuerte Buchanan permitiendo expresamente la aplicación de las leyes estatales en pro del consumidor que no fuesen inconsistentes con las disposiciones de la Ley Magnuson-Moss, *supra*. Toda vez que el Reglamento de Garantías de Vehículos de Motor, *supra*, no conflige con la citada ley federal, el recurrido tiene a su disposición los remedios que le provee el derecho local para reclamar por los alegados desperfectos que exhibe el vehículo que adquirió de Overseas.

---

[21] El Tribunal Supremo de Estados Unidos ha permitido la aplicación del derecho estatal en casos suscitados en enclaves federales cuando, como en el caso de autos, el Congreso expresamente lo permite. *Véase Paul v. U.S.*, *supra*, a la pág. 263; *Environmental Protection Agency v. California*, 426 U.S. 200 (1976); *U.S. v. Sharpnack*, 355 U.S. 286 (1958).

Por todo lo cual, concluimos que incidió el TCA al decidir que la Ley Magnuson-Moss, *supra*, era el único derecho aplicable a la controversia, y al privarle acceso al recurrido al foro de DACO.  Se revoca el dictamen recurrido y se devuelve el caso al foro administrativo para que continúen los procedimientos de manera consistente con esta opinión.

Se dictará sentencia de conformidad.


BALTASAR CORRADA DEL RÍO
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Julio Rodríguez Planell

    Recurrido

         v.                   CC-2002-0888     Certiorari

Overseas Military Sales Corp.;
Scotiabank de Puerto Rico;
Alberic Colón; Chrysler
International Services S.A.

    Peticionarios

SENTENCIA

    San Juan, Puerto Rico, a 18 de septiembre de 2003.

        Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte de esta Sentencia, se revoca el dictamen recurrido y se devuelve el caso al foro administrativo para que continúen los procedimientos de manera consistente con lo dispuesto.

        Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Fuster Berlingeri concurre con el resultado sin opinión escrita. El Juez Presidente señor Andréu García no intervino.

                        Patricia Otón Olivieri
                 Secretaria del Tribunal Supremo