ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL II

| | | |
|---|---|---|
| ALFONSO SERRANO ISERN CARMEN M. CORTÉS MORALES<br>Apelante<br><br>v.<br><br>METRO CAGUAS INCORPORATED H/N/C HOSPITAL PAVÍA CAGUAS Y OTROS<br>Apelado | KLAN202500509 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Caguas<br><br>Caso Número: CG2024CV04529<br><br>Sobre: Despido injustificado (Ley Núm. 80) y otros |

Panel integrado por su presidenta, la Jueza Rivera Marchand, la Jueza Martínez Cordero y el Juez Cruz Hiraldo

Rivera Marchand, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 17 de julio de 2025.

Comparecen ante esta Curia el señor Alfonso Serrano Isern y la señora Carmen M. Cortés Morales (Apelantes) y solicitan que revoquemos la *Sentencia* que el Tribunal de Primera Instancia, Sala Superior de Caguas (TPI o foro primario) notificó el 27 de mayo de 2025. Mediante el referido dictamen, el foro primario desestimó con perjuicio la *Querella* sobre despido injustificado objeto de este recurso, por falta de jurisdicción sobre la materia y sobre la persona.

Por los fundamentos que exponemos a continuación, confirmamos el dictamen apelado.

**I.**

El 11 de diciembre de 2024, los Apelantes presentaron una *Querella* sobre despido injustificado bajo el procedimiento sumario de la Ley Núm. 2 de 17 de octubre de 1961, Ley de Procedimiento Sumario de Reclamaciones Laborales (Ley Núm. 2), 32 LPRA secs. 3118 *et seq.,* en contra de Metro Caguas Incorporated, hnc Hospital Pavía Caguas (Metro Caguas). Expresaron que eran empleados permanentes de HIMA San Pablo Caguas cuando fueron despedidos

injustificadamente, el 20 de diciembre de 2023. Fundamentado en lo anterior, reclamaron el pago de la mesada correspondiente a cada querellante, por virtud de la doctrina del traspaso de negocio en marcha, más un 25% por concepto de honorarios de abogado.

Surge de la *Querella* que, el 14 de agosto de 2023, todas las corporaciones que componen el Grupo HIMA[1] se acogieron al Capítulo 11 del Código de Quiebras, 11 USCA sec. 101 *et seq.*, lo cual les permitió continuar operando de forma ininterrumpida. Se desprende además que, tras acogerse al Capítulo 11, el Tribunal de Quiebras aprobó, mediante una *Orden de Venta* ("Sale Order"), la compraventa y transferencia de los activos del Grupo HIMA a favor de Metro Caguas.[2] Arguyeron los Apelantes que, como parte del proceso de reorganización, el Grupo HIMA presuntamente despidió muchos empleados que Metro Caguas no retuvo como parte de la negociación. Lo antes, con el efecto de que, responden por las obligaciones laborales o los actos ilegales del Grupo HIMA, al amparo de la doctrina de patrono sucesor.

A solicitud de los Apelantes, el 5 de febrero de 2025, el foro primario anotó la rebeldía a Metro Caguas y concedió un término a los Apelantes para presentar el cómputo de las mesadas. Cumplido lo anterior, y sin haber contestado la querella instada en su contra, el 11 de febrero de 2025, Metro Caguas instó un primer petitorio de desestimación. Allí expuso que, producto del procedimiento de quiebras al cual se acogió el Grupo HIMA, subsiste una paralización automática a favor de Metro Caguas que impide a los Apelantes y demás acreedores realizar gestiones de cobro en su contra, fuera del Tribunal de Quiebras.

---

[1] El Grupo HIMA está compuesto por el Grupo HIMA San Pablo, Inc. y el Centro Médico del Turabo, Inc., quienes operan HIMA San Pablo Caguas (HIMA Caguas) e HIMA San Pablo Fajardo (HIMA Fajardo).
[2] Entrada Núm. 8, Anejo 2 en SUMAC.

Como segundo fundamento para la desestimación, Metro Caguas argumentó que, la *Orden de Venta* que emitió el Tribunal de Quiebras aprobó la compraventa y la transferencia de los activos libre de gravámenes, intereses y reclamaciones, y retuvo jurisdicción exclusiva sobre todo reclamo relacionado a la referida transferencia, incluyendo responsabilidades de mesada. Añadió que, a solicitud suya, el Tribunal de Quiebras fijó, el 18 de abril de 2024, como fecha límite para presentar reclamaciones en contra del Grupo HIMA, surgidas en o antes del 31 de enero de 2024, como es el caso de los reclamos de los Apelantes, cesanteados el 20 de diciembre de 2023.[3]

Separadamente, Metro Caguas instó una *Moción solicitando la descalificación de la representación legal de las partes querellantes* ante su presunto conflicto para atender alegaciones contra quien fue su patrono, cliente y con quien existió una relación de accionista. Además, presentó una *Moción solicitando se levante la anotación de rebeldía, ante la inaplicabilidad de la Ley 2-1961.*

Posteriormente, Metro Caguas instó una segunda moción de desestimación en la cual añadió como tercer fundamento para su petitorio la falta de jurisdicción sobre su persona. Lo antes, sustentado en un diligenciamiento del emplazamiento presuntamente inoficioso. En particular, detalló como deficiencias que, no se diligenció en el centro de trabajo; se entregó a una persona que no es agente residente ni trabaja para Metro Caguas; advierte incorrectamente que el término para contestar la querella era de diez (10) días, cuando el plazo aplicable es de quince (15) días si el emplazamiento se diligencia en un distrito judicial distinto al de Caguas; la Ley Núm. 2, *supra,* no aplica a estos hechos debido a que los Apelantes nunca trabajaron para Metro Caguas.

---

[3] Metro Caguas hizo constar que, el Tribunal de Quiebras notificó la fecha límite a todos los acreedores y publicó un edicto a esos efectos el 25 de marzo de 2024, lo cual evidenció mediante el Anejo 7 de la Entrada Núm. 8 en SUMAC.

En atención a las solicitudes de desestimación sobre falta de jurisdicción, descalificación y paralización, el foro primario concedió un término a los Apelantes para exponer su posición. Con relación a la solicitud de Metro Caguas sobre el levantamiento de la rebeldía, el TPI la declaró no ha lugar.[4]

Según requerido, los Apelantes se opusieron a los petitorios de desestimación de Metro Caguas y argumentaron que los mismos fueron presentados, por una parte en rebeldía, fuera de los términos que establece la Ley Núm. 2, *supra.* Expusieron que, a la luz de lo resuelto por el Alto Foro en *Rodríguez v. Urban Brands,* 167 DPR 507, 522 (2006), la doctrina de patrono sucesor aplica aún ante una venta de activos libre de gravámenes bajo un proceso federal de quiebras. Negaron que el error en el término aplicable para contestar la querella, según advertido en el diligenciamiento del emplazamiento, fuese perjudicial toda vez que le beneficiaba tener más días que lo advertido.   Con respecto a la solicitud de descalificación, arguyeron falta de legitimación activa debido a que Metro Caguas no fue su patrono, ni ha existido una relación abogado-cliente. Añadieron que, Metro Caguas no ha demostrado conflicto de interés ni violación ética que justifique la descalificación.

Evaluadas las posturas de ambas partes, el foro primario desestimó con perjuicio la *Querella* en su totalidad. Determinó que, carece de jurisdicción sobre Metro Caguas debido al error insubsanable en el diligenciamiento del emplazamiento, relacionado al término aplicable para contestar la querella. Resolvió, además, que carece de jurisdicción sobre la materia debido a que las alegaciones de la *Querella* objeto de este recurso están relacionadas con la compraventa entre el Grupo HIMA y Metro Caguas para la cual la Corte Federal de Quiebras se reservó la jurisdicción. Hizo

---

[4] Metro Caguas recurrió del referido dictamen ante esta Curia, mediante el Recurso Núm. KLCE202500167. Un panel hermano desestimó el recurso de Metro Caguas por falta de jurisdicción.

constar que, cualquier dictamen sobre el remedio solicitado trastocaría el caudal que administra el foro federal y la *Orden de Venta* que emitió el Tribunal de Quiebras, en virtud de una ley que ocupa el campo.

Inconforme, los Apelantes instan el recurso de epígrafe en el cual señalan la comisión de dos errores, a saber:

> Erró el Tribunal de Primera Instancia al concluir que carecía de jurisdicción sobre la persona de la Apelada[.]

> Erró el Tribunal de Primera Instancia al desestimar la Querella por falta de jurisdicción sobre la materia, al interpretar incorrectamente el alcance de la Orden de Venta de la Corte de Quiebras y al no aplicar o distinguir erróneamente la norma establecida en *Rodríguez Oquendo v. Urban Brands,* 167 DPR 50[7] (2006), y la jurisprudencia persuasiva aplicable, incluyendo la Sentencia del Tribunal de Apelaciones en *Arahiza Vázquez Colón v. Metro Caguas Incorporated,* KLAN202401020 (TA PR 20 de febrero de 2025), referente a la doctrina de patrono sucesor en casos de ventas de activos en procesos de quiebra.

En cumplimiento con nuestro requerimiento, Metro Caguas comparece mediante su alegato y, además de solicitar que confirmemos el dictamen apelado, insta a que desestimemos el recurso de los Apelantes por estos no haber incluido en el expediente el emplazamiento que expidió el TPI.

Con el beneficio de las posturas de ambas partes, resolvemos.

## II.

### A. **La paralización automática y la doctrina del campo ocupado**

La Sección 362(a) del Código de Quiebras, 11 USCA sec. 362, establece la figura de la paralización automática de cualquier litigio en contra de un deudor que haya presentado una petición bajo el Código de Quiebras. *BPPR v. SLG Gómez-López,* 213 DPR 314 (2023). En lo pertinente, dispone lo siguiente:

> (a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970, operates as a stay, applicable to all entities, of-

> (1) the commencement or continuation, including the

issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

(2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;

(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;

(4) any act to create, perfect, or enforce any lien against property of the estate;

(5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;

(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title;

(7) the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor; [...]

Por lo tanto, en virtud de la Sección 362 del Código de Quiebras, queda paralizado de manera inmediata y automática el inicio o la continuación de todo pleito judicial o administrativo que pueda incidir sobre el control de la propiedad del quebrado.[5] De manera que, la paralización automática protege al deudor de las reclamaciones que sus acreedores instaron previo a la petición de quiebra y, al mismo tiempo, protege a los acreedores de las reclamaciones de otros acreedores. *Requena Mercado et als. v. Policía de PR*, 205 DPR 285 (2020). Tal efecto se materializa a partir de la presentación de la petición de quiebra sin requerir de una notificación formal para surtir efecto. *BPPR v. SLG Gómez-López*, supra. En tal sentido, los tribunales estatales quedan automáticamente privados de jurisdicción durante la vigencia de la paralización bajo la Corte de Quiebras. *Íd.*

---

[5] 11 USC § 922(a)(1).

Como norma general, los tribunales estatales tienen jurisdicción concurrente con los tribunales federales para atender asuntos que surjan al amparo de las leyes federales. *González v. Mayagüez Resort & Casino,* 176 DPR 848, 856 (2009), citando a *Tafflin v. Levitt,* 493 U.S. 455 (1990). Sin embargo, la jurisdicción es exclusiva ante un asunto de derecho federal que el Congreso haya dispuesto expresamente para ello o si surge claramente de la ley la intención de privar a los foros estatales de autoridad sobre dicho asunto federal. *Íd.*

Nótese que, el Congreso federal puede ocupar el campo en un asunto federal y excluir la regulación local. *Íd.* Cabe señalar que el fin de la doctrina de ocupación del campo es evitar conflictos regulatorios y, con ello, fomentar una política uniforme. *Íd.* Nótese que, las complicaciones jurisdiccionales bajo la doctrina de campo ocupado tienen dos vertientes. La legislativa versa sobre quién tiene la facultad para regular, mediante legislación, determinada materia, hecho o situación. Mientras que, la jurisdicción judicial representa cuál foro (estatal o federal) está autorizado a considerar las controversias suscitadas. *Íd.*, citando a *Rodríguez v. Overseas Military,* 160 DPR 270, 279 (2009).

**B. Regla 10.2 de Procedimiento Civil**

La Regla 10.2 de las Reglas de Procedimiento Civil, 32 LPRA Ap. V, R. 10.2, viabiliza que un demandado solicite la desestimación de la causa de acción en su contra, antes de contestarla, si de las alegaciones de la demanda surge claramente que alguna de las defensas afirmativas derrotará la pretensión de la parte demandante. *Costas Elena y otros v. Magic Sport y otros,* 213 DPR 523 (2024); *Eagle Security v. Efrón Dorado, et al.,* 211 DPR 70, 83 (2023). Particularmente, la Regla 10.2, *supra,* enumera las siguientes defensas: (1) falta de jurisdicción sobre la materia; (2) falta de jurisdicción sobre la persona; (3) insuficiencia del

emplazamiento; (4) insuficiencia del diligenciamiento del emplazamiento; (5) dejar de exponer una reclamación que justifique la concesión de un remedio; y (6) dejar de acumular una parte indispensable. Regla 10.2 de Procedimiento Civil, *supra*; *Díaz Vázquez y otros v. Colón Peña y otros,* 2024 TSPR 113, resuelto el 25 de octubre de 2024; *Blassino Alvarado y otro v. Reyes Blassino y otro,* 2024 TSPR 93, resuelto el 20 de agosto de 2024.

Ante una solicitud de desestimación bajo el inciso (1) de la citada Regla 10.2 de Procedimiento Civil, el tribunal ha de desestimar el pleito, de conformidad con la Regla 10.8(c) de las Reglas de Procedimiento Civil, 32 LPRA Ap. V, R. 10.8(c). Sobre este asunto, el Alto Foro interpretó que los tribunales locales vienen obligados a desestimar una reclamación, cuando esta sea de la jurisdicción de una agencia administrativa o de la esfera federal. *González v. Mayagüez Resort & Casino,* 176 DPR 848, 855 (2009).[6]

Es norma reiterada que, la ausencia de jurisdicción trae varias consecuencias, tales como el que no sea susceptible de ser subsanada; las partes no puedan conferírsela voluntariamente a un tribunal como tampoco puede este arrogársela; conlleva la nulidad de los dictámenes emitidos; impone a los tribunales el ineludible deber de auscultar su propia jurisdicción; obliga a los tribunales apelativos a examinar la jurisdicción del foro de donde procede el recurso, y puede presentarse en cualquier etapa del procedimiento, a instancia de las partes o por el tribunal motu proprio. *Allied Mgmt. Group v. Oriental Bank*, 204 DPR 374 (2020).

En ese sentido, en reiteradas ocasiones el Tribunal Supremo ha expresado que, los tribunales debemos ser celosos guardianes de nuestra jurisdicción, sin poseer discreción para asumirla donde no la hay. *R&B Power, Inc. v. Junta de Subastas de la Administración*

---

[6] Citando a R. Hernández Colón, *Práctica jurídica de Puerto Rico: derecho procesal civil,* 4ta ed., San Juan, Ed. Lexisnexis, 2007, Sec. 2601, pág. 234.

*de Servicios Generales de Puerto Rico,* 2024 TSPR 24, resuelto el 13 de marzo de 2024. A esos efectos, las cuestiones de jurisdicción son de índole privilegiada y deben ser resueltas con preferencia. *Íd.* A causa de ello, cuando un tribunal determina que no tiene jurisdicción para intervenir en un asunto, procede la inmediata desestimación del recurso apelativo, conforme a lo ordenado por las leyes y reglamentos para el perfeccionamiento de estos recursos. *Cobra Acquisitions v. Mun. Yabucoa et al.,* 210 DPR 384 (2022); *Allied Mgmt. Group v. Oriental Bank,* supra.

**III.**

En su recurso, los Apelantes impugnan la determinación del foro primario de declarar con lugar las solicitudes de desestimación que instó Metro Caguas y, con ello, desestimar con perjuicio la *Querella* objeto de este pleito por falta de jurisdicción sobre la persona y sobre la materia. Según el Apelante, el foro primario interpretó incorrectamente el alcance de la *Orden de Venta* que emitió la Corte de Quiebras, sin considerar lo resuelto por el Alto Foro en *Rodríguez v. Urban Brands,* supra.

En atención a lo anterior, y por tratarse de un asunto jurisdiccional, debemos resolver como cuestión de umbral, si el foro primario tiene jurisdicción sobre Metro Caguas y sobre la materia objeto de este recurso o si el foro federal ocupa el campo. Según abundaremos a continuación, dictaminamos que procede desestimar la presente causa por falta de jurisdicción sobre la materia, por los Apelantes presentar su reclamación en el foro equivocado. A la luz de lo anterior, resulta innecesario adjudicar el señalamiento relacionado a la jurisdicción sobre la persona.

Según la normativa aplicable, luego del Grupo HIMA acogerse al Capítulo 11 bajo el Código de Quiebras, *supra,* el campo está ocupado por la Corte de Quiebras y subsiste una paralización automática en los foros estatales que impide a los Apelantes

entablar una acción de cobro en contra del Grupo HIMA o de Metro Caguas fuera del Tribunal de Quiebras.

Si bien es cierto que, en *Rodríguez v. Urban Brands,* supra, el Tribunal Supremo dispuso que "la venta de activos bajo un procedimiento federal de quiebras, aunque sea libre de gravámenes ('free of liens'), no es impedimento para aplicar la doctrina de patrono sucesor según desarrollada por nuestros precedentes",[7] lo hizo en el contexto de una acreedora que no fue debidamente notificada por su patrono anterior de su determinación de acogerse al procedimiento de quiebras. Además, en dicho caso, la *Orden* que emitió el Tribunal de Quiebras no prohibió expresamente la aplicación de la doctrina de patrono sucesor. Incluso, en *Rodríguez v. Urban Brands,* supra, el foro federal que atendía el proceso de quiebras no se reservó la jurisdicción para atender controversias relacionadas a la orden de venta de activos.

Por el contrario, en el caso de marras, los Apelantes fueron notificados -mediante un edicto publicado el 31 de agosto de 2023 en el periódico *The San Juan Daily Star*- de que el Grupo HIMA se acogió al Capítulo 11 bajo el Código de Quiebras.[8] Además, el foro federal dispuso claramente en la *Orden de Venta* que se reservaba jurisdicción para atender toda controversia sobre la compraventa y la transferencia de los activos entre el Grupo HIMA y Metro Caguas. En su pronunciamiento, el Tribunal de Quiebras estableció que, la referida transferencia estaría libre de gravámenes y de la aplicación de la doctrina de patrono sucesor, al expresar que:

> [t]he transfer of the Assets to METRO CAGUAS INCORPORATED as authorized by this Sale Order, will constitute a legal, valid, and effective transfer of each of the Assets and, under Section 363 of the Bankruptcy Code, and with the benefits of the transfer tax exemption provided for by 11 U.S.C. § 1146(a), the transfer of the title of the Assets shall be free and clear of all liens, claims and encumbrances against or with respect to any of the Debtors or in, on, or against or with

---

[7] Énfasis suprimido.
[8] Entrada Núm. 8, Anejo 3 en SUMAC.

respect to any of the Assets, including, but not limited to: [...] (d) claims, debts, encumbrances, obligations, liabilities, demands, actions, suits [...] (iv) any rights under labor or employment agreements [...] (vi) any liabilities of Debtors for any present or former employees, officers, directors, members, retirees, independent contractors or consultants of Debtors, including, without limitation, any liabilities associated with any claims for [...] retention, termination, severance, or other payments [...] arising out of or in connection with any and all claims, arbitration awards, judgments, litigation or legal proceedings (whether instituted prior to or after the Closing) of any employee or employees (whether hired by METRO CAGUAS INCORPORATED or not), for any severance liability, reinstatement, back pay liability, debts, termination, failure to notify, failure to bargain, negligent or willful acts, errors, omissions, breach of contract, breach of Stipulation, breach of Collective Bargaining Agreement, misconduct, termination, employee seniority accrued while employed with Seller and successorship liability [...] any and all liabilities or obligations, union dues, severance obligations, (including without limitation any and all penalties, fines, settlements, interests, costs or expenses, back pay, damages, under any local, state, federal or Commonwealth of Puerto Rico labor and employment laws, (including without limitation: any and all claims under [...] unjust dismissal under Act No. 80 of May 30, 1976, 29 L.P.R.A. § 185a *et seq.*[9]

Posteriormente, y a solicitud de Metro Caguas, la Corte de Quiebras estableció, el 18 de abril de 2024, como la fecha límite para entablar ante dicho foro cualquier reclamación en contra del Grupo HIMA que hubiese surgido en o antes del 31 de enero de 2024. A esos efectos expuso:

[e]xcept as otherwise provided herein, each person or entity, including, without limitation, individuals, partnerships, corporations, joint ventures, trusts, and governmental units, that hold or wishes to assert an administrative expense claim pursuant to Section 503(b) of the Bankruptcy Code (each, an "Administrative Expense Claim") against the Debtors' estates, which claim arose during the period from the Petition Date through and including January 31, 2024, must file a request for allowance of such Administrative Expense Claim (a "Payment Request"), substantially in the form attached hereto, no later than 4:00 p.m. (ET) on the date that is thirty (30) days after the entry of this Order (such date, the "Administrative Expense Bar Date"). (Énfasis suprimido.)[10]

---

[9] Entrada Núm. 8, Anejo 2, pág. 6-9 en SUMAC.
[10] Entrada Núm. 8, Anejo 6, pág. 3 en SUMAC.

Según expusimos en el tracto procesal, los Apelantes fueron cesanteados el 20 de diciembre de 2023, por lo cual, su reclamación laboral surgió en o antes del 31 de enero de 2024. A tenor del dictamen de la Corte de Quiebras antes transcrito, los Apelantes tenían hasta el 18 de abril de 2024 para presentar -ante el foro federal- sus reclamos en contra del Grupo HIMA, derivados de la transferencia y venta de activos a Metro Caguas. Al presentar su *Querella* ante el TPI, el 11 de diciembre de 2024, procede desestimar su causa por falta de jurisdicción sobre la materia. Según expusimos, el Tribunal de Quiebras ocupa el campo sobre este asunto y está en vigor la orden de paralización que protege al Grupo HIMA y a Metro Caguas e impide la presentación de acciones de cobro en los foros estatales relacionadas a la transferencia y venta de activos en cuestión. El segundo error señalado no fue cometido.

En virtud de lo anterior, ante la falta de jurisdicción del TPI sobre la materia objeto de este recurso, prescindimos de atender el primer señalamiento de error, atinente a la falta de jurisdicción sobre la persona.

**IV.**

Por todo lo antes, confirmamos la *Sentencia* apelada.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones